De Dios Santana v. Mukasey That is correct, Your Honor. Fred Wang, I'd like to reserve five minutes, Your Honor. Your Honor, on a particular day, Mr. Santana visited the immigration office with his father, who was a green card holder, and his brother, who was a citizen, and who was the only English speaking person. That wasn't the right thing to do, but it was done, because Mr. Santana did not have any legal status in the United States at that time. Fortunately for him, when he went to the immigration office, the immigration had situated a carrel outside of the immigration office with an immigration officer. The officer looked at Mr. Santana's green card, provided forms to him, and released him to himself to do the filing. Mr. Santana did file the documents, and subsequently was brought before the immigration court for removal proceedings, because his priority date was not current. Apparently, the officer had looked at the wrong priority dates, because they had four different ones, and one especially for Mexico. He must have looked at the non-Mexico one, which was three years' difference. And so, what we're contending, Your Honor, in this particular respect, is the doctrine of equitable tolling. How does that issue get before us? Beg your pardon, Your Honor? How does that issue get before us? Do we have jurisdiction to review the removal order, the final order of the BIA? Are you talking about the first order or the second order? I'm talking about the first order. Do we have jurisdiction to review that? I reviewed the stone matter, Your Honor. I've checked it out, and I've made an argument to the court here from, if the court would allow me to do it later or now, Your Honor, how would you like me to proceed? Well, let me make myself clear. He did not file a petition to review the order of the BIA, right? The first one. The first one. That is correct, Your Honor. The only thing that's before us is the order denying the motion for reconsideration. That is correct, Your Honor. The standard of review is abuse of discretion. Yes, sir. So how did the BIA abuse its discretion in denying the petition for reconsideration? Well, the arguments made to the immigration court was based on the equitable tolling matter, doctrine. The BIA looked at the equitable estoppel matters and made their affirmance without opinions based on the equitable estoppel, never addressed the issues concerning equitable tolling. And so that is where the BIA abused its discretion. You say that they should have applied the doctrine of equitable tolling upon the motion for reconsideration? Yes, Your Honor. What's the authority for applying it? That was the issue that was argued before the BIA. That was the primary and only issue argued before the BIA, not the issue of equitable estoppel. I understand. You argue equitable tolling applies. That's correct. Well, what authority do you have? What's the best case? Well, looking at Eterborea, that lays out what you can do if there's error involved. Then you have Quintero, which states that, according to the holding, the immigration removal, using the permissive may neither, that sets it up for an alternate possibility to the I.J. He can may neither do that or he may neither do another thing. And he chose that the Court held that standing. That is my interpretation of Quintero, Your Honor. Let me ask you this, counsel. In your briefs, you were arguing basically the first denial and not addressing what you had to prove in respect to the reopening. Well, in the argument, Your Honor, what I'm looking at is they're one and the same issues coming out from the BIA and the I.J. If you argue the I.J.'s issue, it's the same as the BIA's. If you argue the BIA, it's the same as the I.J.'s. But isn't the reopening standard of review a different one than the basic review of the original order? Well, the abuse of discretion is my understanding of the second one, Your Honor. And at that point, I believe they abused their discretion because they still did not address the issue of equitable tolling. It was never addressed anywhere at all in their two decisions. How does equitable tolling apply to a case where they get the wrong information from the BIA office? Well, that is what I was going to present to the court, that I believe that this court should take a new role in what is established as equitable tolling for missed deadlines based on error and, you know, or affirmative misdeeds. I'm asking the court to look at affirmative tolling because, in this instance, there is accountability to be had. Without accountability, equitable tolling just doesn't bring the government to what it should do and the cause that it has done. In like manner, in 1983 cases where you have under the color of law for state agencies, which the federal government isn't bound by, but the system there allows citizens or people to bring causes of action against government misdeeds or government negligence. And so what I'm asking the court to do in that same respect is to expand the bounds within your powers and take the tolling from the decision of the immigration judge's decision and toll the time until Mr. Santana would be placed in the position he was before he was given misinformation, which subjected him to removal and separation from his family. Well, what would you have the BIA do? Give him a new priority date or defer his removal? Defer the removal, Your Honor. Until his priority date comes up? Yes, Your Honor. Is there any case that supports that kind of action? No, Your Honor. That's why I'm saying I'm asking the court to take a new stand on this matter and review the case laws as it stands and broaden the scope of past mis-filings to tolling the filings times or orders that arise from these past failings. Now, when is the estimated time that these are going to be available? Well, it's now I believe 11 months. Well, we're 11 months out. We don't know what the time is going to be until the next, you know, sometimes they go one week for one month. Sometimes they go more. Now, does he have voluntary departure still? Yes, Your Honor. He does. 60 days subsequent to the final hearing. On the BIA order? It applies also when we have a motion for reconsideration or reopening. Does it apply there? I believe there's a stay issued by the by the Ninth Circuit and I believe we made a motion to stay also to toll the voluntary departure time. Although it's not required, other circuits require it and it's just a safe matter to do so. So, if he went back to Mexico, he could come back in about a year, is that right? No, Your Honor. He would be bound by the other part of the immigration law which says that if you've been illegally in the United States for more than six months, you cannot come back for three years. If you've been here for more than one year, you cannot come back for 10 years. You may seek a stay issued by the Attorney General but, you know, that's very much up in the air. I haven't seen that happen. That's just anecdotal, Your Honor. When is his estimated priority date? At this point, looking at it yesterday, Your Honor, it was about 11 months. 11 months? Yes, Your Honor. Possibly early next year? Yes, depending on how fast the thing moves but it's usually one week per month or two weeks per month or something like that. But you're saying that with voluntary departure, he couldn't take advantage of that? Well, it's one of those two-headed things. If you take advantage, it looks good. It allows you to come back because you haven't been deported. But the second, the other immigration law which states that if you've been here illegally for more than one year, you are barred from returning for 10 years. So it's a ferret type victory for Mr. Santana, I would say. So that's why we're here before the court asking the court to look at the equitable tolling and see if we can hold the service accountable and put the people who have been wrong back to the place where they were. Under the circumstances, have you approached the government about trying to work something out? I mean, they must have some discretion to. I believe that at the time that this was going on, the period to stay here would not have been within what they felt was reasonable because it would have been like two and a half years or something. And having spoken to the assistant trial attorneys previously, they were not inclined to allow someone to stay here for more than a short period of time if it was possible. How about your opposition counsel here today? Beg your pardon? How about the opposition, the government counsel that's here today, did you chat with her about this possibility? No, we didn't. We did not. She seems like a pretty reasonable person. I just thought, well, maybe I made a mistake in thinking that when the assistant trial counsel has made a decision that the government would follow and abide by it. I think she's from Washington, D.C. I'm not sure, but she might be from Washington. We sometimes refer these things to our mediation department where something can be worked out. Well, that would be, you know, very good for Mr. Santana if that was possible. But I'm here to argue before this Court what I believe we should attempt to do at this point in time. Thank you. Oh, I'm doing it in the category. Okay. And I just wanted to the Court is well aware of the equitable tolling definitions. It's read the briefs and things of that nature. So the strange thing about this whole matter is usually these matters are brought before the Court because some government agent has acted, you know, irrationally or condescendingly or badly towards the person. But in this instance, it wasn't the case. The officer was very nice. The only problem was he made a fatal mistake in telling him to go ahead. So we're asking the Court to, in its part, to expand the scope of the equitable tolling to allow Mr. Santana to remain here from the point of the judge's final decision so that he can be put back into the position he was before he took the advice, which is a very powerful advice from an immigration officer, that he could file his immigration matter here, so. Are there any other questions that the Court would like to? Thank you very much. May it please the Court, Shelley Goad on behalf of the Attorney General, Michael Mukasey. At bottom, as pointed out by counsel for Petitioner, this case involves adjustment of status. And although Mr. Dedea-Santano has an approved visa petition, his priority date was not current at the time of his removal proceedings, nor is it current today. And in fact, assuming State Department processing times remain consistent, it may be – it may not be current for at least another 10 years. Another 10 years? Yes. How do you – how do you arrive at that? Well, Mr. Dedea-Santano – I thought it went back to 93 or 95? It's June 14, 1993. Wow. But here's why I come to that conclusion. The visa bulletin from December 2003, when the adjustment application was filed, at that time, priority dates were current as of December 91. And as of the most recent visa bulletin, March 2008, the priority dates that were current were April 1st – April 92. And so, in a matter of from December 2003 to March 2008, the numbers of the priority dates only progressed a matter of five months. Are we getting to a point where there's a violation of due process because the government has fallen apart? Well, I'm not sure exactly how to answer that, except that DHS has no control over when the visa number becomes available. That is a matter of Congress providing how many thousands of immigrant visa numbers are available for every year. And so, they're put in chronological order, and that's – that's simply the choice that Congress has made in allowing second preference visa petitions, because the visa petition filed on Mr. Dedeo Santana's behalf was filed by his father, who was a lawful permanent resident and not a citizen. And now, where would opposing counsel get 11 months? Where does he get that? I am not sure. I don't know. I did – I did calculate it out in my head and looked to the two visa bulletins. You know, unless something drastically changes in the future, I don't think that it will be for another 10 years before the visa is current. But Mr. Dedeo Santana does have a stay of voluntary departure. I believe when he filed the motion to reconsider with the Board, he did request that the voluntary departure period be stayed. And the Board, in its decision, did grant that and allowed him a remaining period of 30 days. And the petition for review and the motion for stay – a stay of removal were filed within that period, such that he would be able to comply with his voluntary departure. Now, what's the consequence of that? Opposing counsel says he still couldn't come back for 10 years. Is that right? He could be subject to an inadmissibility bar of – an unlawful presence inadmissibility bar, which I believe is located at 8 USC 1182A9B5. But he could request a waiver of that. Because he is the son of an LPR, he would have to demonstrate that that would result in extreme hardship to his father. But I have seen that granted in other cases. So I don't think it's – it's not that it cannot happen. It can't. It's obviously up to the – it's a discretionary determination. But that could be done. But he could return to Mexico and not under an order of removal. And could wait until the visa number becomes available at that point. Then he has to apply. Or he has to apply for a waiver. Right. Exactly. From outside the country. Yes. But he would already be outside the country if he complied with his voluntary departure. So certainly I've, you know, been amenable to mediation in other instances where we think that the visa number – it's not very long that the visa number will become available. But in this case, since we're talking about a substantial period of time, I – as reasonable as I am, I don't think we would – we would like that in this situation. Is there any way to just verify when this visa would be available? I don't think there's anything concrete. I could – I could certainly provide the court after I return to Washington with copies of the pertinent visa petitions, if that would be helpful. I think that would be of assistance to us. Okay. I will do that. If there are no further questions. Thank you. Your Honor, I just – Your Honors, I'd just like to make one comment here. Where did you get your 11 months? Well, we looked at the current piece, as the counsel has noted, that it's – right now it's at 11 months difference in the – his party date and today's date. There's an 11-month difference there. So if – on the best possible case, it could be 11 months or even earlier. And that's what I'm going to advise the court of at this time. One of the other avenues maybe that in mediation it can come occur from this is that Mr. DeDeos or Santana be given until possibly December 2009. And the reason I state that is – and this is something that we have to look at in advocacy for our clients – is possibly that with the new Congress coming in, with the focus of the immigration reform laws that has been engendered here and pushed by the President and also opposing parties, that that might become a viable alternative because it looks like it would cover a person like Mr. Santana here, who had come here prior to – who had come here illegally but has remained in lawful status without violating any laws. Questions? I don't have any. Thank you very much, Your Honor. Okay. Thank you for your arguments. We'll – we'll just wait for that submission you're going to – and make sure you serve counsel with it, okay? Do you have copies of what was recently spoken from? If it would be helpful or if I should just wait and submit it? Probably should just submit them. That'd be better. And send him a copy. Okay. Thank you. The matter will be submitted and we're through for the week. All rise. This court for this session is adjourned.
judges: Fletcher, Paez, Schwarzer